# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### EASTERN DIVISION

Sandra O'Shea, individually, and on behalf of
the Estate of Terrence O'Shea, deceased,

            Plaintiff,

v.

Asbestos Corporation, Ltd., a Canadian
corporation, et al.;

Atlas Turner, Inc., a Canadian corporation;

AWT Air Company, Inc. (f/k/a Research-
Cottrell, Inc.), a New Jersey corporation;

Baker Manufacturing Company, LLC, a
Delaware corporation;

Bayer CropScience, Inc., (as successor to
Rhone-Poulenc, Inc., f/k/a Amchem Products,
Inc., f/k/a Benjamin Foster Company), a New
York corporation;

Bell & Gossett, a division of ITT Corporation,
a foreign corporation;

Bell Asbestos Mines, Ltd., a Canadian
corporation;

Building Sprinkler Company, Inc., a North
Dakota corporation;

Burnham, LLC, f/k/a Burnham Holdings, Inc.,
f/k/a Burnham Corporation, a Delaware
corporation;

CBS Corporation, f/k/a Westinghouse Electric
Corporation, a Delaware corporation;

Cleaver Brooks, Division of Aqua Chem, Inc.,
a Delaware corporation;

Case No. _____

**NOTICE OF REMOVAL OF
DEFENDANT BUILDING
SPRINKLER COMPANY, INC.**

Exxon Mobil Corporation, f/k/a Mobil Oil
Corporation, a New Jersey corporation;

Fargo-Moorhead Insulation Company, a North
Dakota corporation;

Fisher Controls International, LLC, f/k/a Fisher
Governor Company, a Delaware corporation;

Foster Products Corporation, (as successor-in-
interest to Foster Products Division of H.B.
Fuller Company and to the Benjamin Foster
Division of AmChem Products, Inc.) a
Minnesota corporation;

Frommelt Safety Products, a Wisconsin
corporation;

General Engineering Development
Corporation, f/k/a Fuel Economy Engineering
Company, a South Dakota corporation;

Goodin Company, a foreign corporation;

Goodrich Corporation, f/k/a B.F. Goodrich
Company, a New York corporation;

Goodyear Tire & Rubber Company, an Ohio
corporation;

Goulds Pumps, Inc., a New York corporation;

Grinnell Corporation, a Minnesota corporation;

H.B. Fuller Company, a Minnesota
corporation;

Hobart Brothers Company, an Ohio
corporation;

Honeywell, Inc., a Delaware corporation;

Industrial Contractors, Inc., a North Dakota
corporation;

Industrial Holdings Corporation, f/k/a The
Carborundum Company a Delaware
corporation;

The Lincoln Electric Company, an Ohio
corporation;

Linde, LLC (f/k/a Airco, Inc.), a Delaware
corporation;

McMaster Carr Supply Company, an Illinois
corporation;

Northern Plumbing Supply, Inc., a North
Dakota corporation;

Northwest Iron Fireman, Inc., a North Dakota
corporation;

Owens-Illinois, Inc., an Ohio corporation;

Paul W. Abbott Company, Inc., a foreign
corporation;

Praxair Distribution, Inc., a Delaware
corporation;

RCH Newco II, LLC, f/k/a Robertson Ceco
Corporation *Successor to H.H. Robertson
Company), a Delaware corporation;

Rite-Hite Corporation, a Wisconsin
corporation;

Singer Safety Copmany, an Illinois
corporation;

Smith-Sharpe Company, a foreign corporation;

Sprinkmann Sons Corporation, a Wisconsin
corporation,

Union Carbide Corporation, a New York
corporation;

| | |
|---|---|
| Walker Jamar Company; a Minnesota corporation; | |
| Weil McLain Company, a foreign corporation; | |
| Western Steel & Plumbing, Inc., a North Dakota Corporation; | |
| Whittier Filtration, Inc., f/k/a U.S. Filter/Whittier, Inc., a subsidiary of Water Applications & Systems Corporation, a Delaware corporation; | |
| Zurn Industries, LLC, f/k/a Zurn Industries, Inc., a Pennsylvania corporation; | |
| Defendants. | |

Defendant Building Sprinkler Company, Inc. ("Building Sprinkler") hereby removes the above-styled civil action from the Cass County District Court for the State of North Dakota, pursuant to 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1446. While reserving the right to respond more fully if a remand is sought by Plaintiff, Building Sprinkler provides the following short and plain statement of the basis for its removal as required by 28 U.S.C. § 1446(a).

## I.     FACTUAL BACKGROUND

1.      Building Sprinkler offers this statement to satisfy its obligation as a removing defendant pursuant to § 1446(a) to provide a short and plain statement of the legal and factual basis for removal, but reserves the right, and requests an opportunity, to respond more fully in writing to any motion for remand in this case, and to supplement the record with affidavits, declarations, and/or evidence supporting the assertions of fact

stated herein.  On May 28, 2019, Plaintiff served a copy of the Summons and Complaint in the above-captioned action on Defendant Building Sprinkler, in case styled *Sandra O'Shea, individually and on behalf of the Estate of Terrence O'Shea, deceased*, venued in Cass County District Court, East Central Judicial District, for the State of North Dakota, Court File No. 09-2019-CV-01798. A true and correct copy of the Summons and Complaint is attached hereto as "Exhibit 1."

2.      Plaintiff brings this survival and wrongful death action arising out of the injury, and death, of Terrence O'Shea ("O'Shea" or "Decedent"). Plaintiff alleges that Decedent contracted an asbestos-related disease as a result of his exposure to asbestos. Based on these allegations, Plaintiff asserts claims for intentional, negligent, reckless or willful failure to warn; breach of implied warranties; conspiracy; and strict liability/product liability for defective and unreasonably dangerous product.  Plaintiff also asserts claims for fraud/deceit, enterprise liability, market share liability and alternative liability. (*See* Ex. 1, Complaint). The claims are pleaded against all defendants, including Building Sprinkler, without limitation.  (*Id.*)

3.      The Complaint does not identify the alleged basis or source of Decedent's exposure to asbestos.

4.      In or about 2001, Decedent commenced a separate and prior personal injury lawsuit against numerous defendants, including Building Sprinkler, arising out of his alleged exposure to asbestos (the "Prior Lawsuit").

5.      Decedent worked as a pipefitter primarily in the State of North Dakota from approximately 1963 to 1999.  (*See* Ex. 2, Work History of Terrence O'Shea from Prior

Lawsuit). In the Prior Lawsuit, Decedent's claims against Building Sprinkler were based, at least in part, on his alleged exposure to asbestos as a result of his work with or around asbestos-containing products at (1) the Minot Air Force Base ("MAFB"); and (2) the missile sites near Minot, N.D., and/or the A.B.M. missile sites located at or near Concrete, Nekoma and Conrad, North Dakota (collectively referred to herein as the "missile sites"). (*Id.* at pp. 3-4, 9; Ex. 3, Deposition of Terrence O'Shea, 7-29-2002, from Prior Lawsuit). Therefore, Building Sprinkler reasonably anticipates that Plaintiff's claims against Building Sprinkler in the instant lawsuit will also arise out of Decedent's alleged exposure as a result of his work with or around asbestos-containing products at the MAFB and/or missile sites.

6.     The MAFB is owned by the United States Air Force. Construction of MAFB began in 1955 and the base became operational in 1957. (*See* Ex. 4, Minot Air Force Base History, *available at* https://www.minot.af.mil/About-Us/History (last visited May 17, 2019)). The U.S. Air Force took occupancy on February 15, 1957. (*Id.*) The award of contracts and supervision of construction for the MAFB was assigned to the Missouri Division of the Corps of Engineers, acting as construction agents for the United States Air Force. (*See* Ex. 5, "To Break Ground For Base at Minot," *Bismarck Tribune* (July 6, 1955) at 3; Ex. 6, "Kiewit Bids Low at Minot," *Bismarck Tribune* (Oct. 26, 1955) at ); Ex. 7, "Iowa Firm Low on Minot Bids," *Bismarck Tribune* (Oct. 27, 1955) at 17; Ex. 8, "Minot Air Base Gets More Funds," *Bismarck Tribune* (March 7, 1958) at 5; Ex. 9, "Minot Air Base Bid Opening Set," *Bismarck Tribune* (May 12, 1955) at 20.)

7.      Pursuant to appropriations laws, the U.S. Government has authorized the Secretary of the Air Force to establish and develop military installations and facilities by acquiring, constructing, converting, rehabilitating, or installing permanent or temporary public works for numerous military installation projects, including the MAFB. More specifically, at all times relevant to the instant lawsuit, the Secretary of the Air Force was authorized to construct airfield pavements, liquid fuel storage and dispensing facilities, communications, navigational aids and airfield lighting facilities, operational facilities, aircraft maintenance facilities, training facilities, troop housing and messing facilities, family housing, utilities, land acquisition, medical facilities, storage facilities, personnel facilities, administrative and community facilities, and shop facilities at the MAFB. The authority to place permanent and temporary structures for military installations includes the authority for administration, overhead, planning, and supervision incident to construction. As relevant here, contracts for military construction projects were to be executed under the jurisdiction and supervision of the Corps of Engineers, Department of the Army or the Bureau of the Yards and Docks, or Department of the Navy, unless the Secretary of Defense determined that supervision of the contracts should be executed under the jurisdiction and supervision of another Government agency.  (*See* Ex. 10, Public Law 534 § 301, July 27, 1954; Ex. 11, Public Law 765 § 301, Sept. 1, 1954; Ex. 12, Public Law 85-685, Aug. 20, 1958; Ex. 13, Public Law 87-554, July 27, 1962).

8.      The Secretary of the Air Force was authorized to acquire land for the purpose of developing such Air Force installations.  (*See* Exs. 10-13).

9.     The Minuteman Missile complexes are also owned by the United States Air Force.  In 1961, the U.S. Air Force selected the MAFB to support an Air Force dispersed Minuteman missile complex.  (*See* Ex. 14, "Minot Area Will Have ICBM Sites," *Bismarck Tribune* (June 14, 1961) at 1).  The Corps of Engineers Ballistic Missile Construction Office ("CEBMCO") oversaw the construction of the 150 silos and 15 launch complexes.  (*See* Ex. 15, "Minuteman Aide is Assigned," *Bismarck Tribune* (Oct. 4, 1961) at 19; Ex. 16, "First Minuteman Property Bought from Kief Couple," *Bismarck Tribune* (Nov. 24, 1961) at 1; Ex. 17, "$67 Million Low on Missile Work," *Bismarck Tribune* (Dec. 21, 1961) at 1).

10.     In the 1970s, the U.S. military deployed the first missile defense system. The Stanley R. Mickelsen Safeguard Complex located in North Dakota was part of the U.S. Army's Safeguard missile defense system defending U.S. missile fields in North Dakota.  Construction of the Safeguard Complex started in 1970 under the direction of the U.S. Army Corps of Engineers, Huntsville Division. The complex consisted of several sites, including the Missile Site Radar (MSR) near Nekoma, North Dakota, and the Perimeter Acquisition Radar (PAR) near Concrete, North Dakota, as well as four smaller backup Sprint missile sites.  (Ex. 18, The Impact of the Safeguard Antiballistic Missile System Construction on Northeastern North Dakota, April 1976; Ex. 19, "Perimeter Acquisition Radar Attack Characterization System," *at* https://www.afspc.af.mil/DesktopModules/ArticleCS/Print.aspx?PortalId=3&ModuleId=659&Article=1126406 (last visited June 25, 2019); Ex. 20, "SMDC History: Construction to begin on RSLs," *at* https://www.army.mil/article/210806/smdc_history_construction_to_begin_on_rsls (last visited June 24, 2019); Ex. 21, "SMDC History: Army Accepts Safeguard System," *at* https://www.army.mil/article/211715/smdc_history_army_accepts_safeguard_system (last

accessed June 24, 2019); Ex. 22, "Cavalier Air Force Station: Instant to Watchful Instant," *at* https://www.afspc.af.mil/DesktopModules/ArticleCS/Print.aspx?PortalId=3&ModuleId=599&Article=249523 (last accessed June 24, 2019); Ex. 23, SMDC History: The Army's newest post," *at* https://www.army.mil/article/196471/smdc_history_the_armys_newest_post (last accessed June 24, 2019).

11.     Plaintiff's claims against Building Sprinkler arise out of its work as a government contractor at the MAFB, where Building Sprinkler allegedly supplied and installed insulation for various insulation jobs that occurred during the time periods relevant to this lawsuit. The insulation work that Building Sprinkler allegedly performed at the MAFB and/or missile sites was governed by detailed specifications, including specifications governing the products that were permitted for use on the projects.  (Ex. 24, Minot Air Force Base, Minot, North Dakota, Specifications for SAC Missile Facility, Invitation Serial No. Eng. 25-066-59-140, U.S. Army Engineer District, Omaha (May 1959); Ex. 25, Deposition of William Sornsin, 6/30/1987, at 32-33; Ex. 26, Deposition of William Sornsin, 9/28/1983, at p. 53; Ex. 27, Deposition of Herbert Gartner, 8/21/1991, pp. 213-18, 264-72).

12.     More specifically, the Corps of Engineers, on behalf of the United States Air Force, promulgated specifications that governed construction at the MAFB, including Building Sprinkler's insulation work at the MAFB.  The Corps of Engineers specified the use of asbestos and/or asbestos-containing insulation products for Building Sprinkler's insulation work at the MAFB, and the Corps of Engineers would reject the use of any products that did not meet the specifications, including products that did not meet

specifications regarding the asbestos content of such insulation products. Government inspectors were on-site daily during construction projects at air force bases, and the government inspectors would inspect the work that the insulation contractors performed at the site. The government inspectors would inspect how Defendants were doing their work and whether Defendants were using the products that were specified by the Corps of Engineers, pursuant to its detailed specifications.  (*See* Exs. 24-27; Ex. 28, Deposition of Andrew I. Olerud, Jr., 1/18/1983, pp. 98-99, 110-118; Ex. 29, Deposition of Andrew I. Olerud, Jr. 12-05-1991, pp. 14-21, 71-72; Ex. 30, Deposition of J. Nodsle, 1/25/1983, pp. 109-120; Ex. 31, Deposition of James Matthews, 3/23/1982 (Vol. 1), pp. 39-40, 83-88; Ex. 32, Deposition of James Matthews, 3/24/1982 (Vol. 2), at pp. 154, 180-85, 187-89, 195-202, 209-211, 218-20; Ex. 33, Deposition of Rudolph Opp, 10/15/1991, pp. 14-20; Ex. 34, Deposition of Rudolph Opp, 7/18/1994, pp. 189-190; Ex. 35, Deposition of Bruce Bergson, 7/18/2000, pp. 65-68; Ex. 36, Deposition of Andrew I. Olerud, Jr. dated February 21, 1991; Ex. 37, Declaration of Kyle Dotson, at ¶ 11-12).

13.    Department of Defense specifications for a high temperature insulating cement, which required the cement include asbestos fibers, had no requirement that the product be accompanied by a warning at the time of Defendants' work at the base. (*See* Ex. 38, MilSpec-C-28610; Military Specification: Cement, Insulation, High Temperature). More importantly, the specifications require compliance with a separate military standard regarding markings, MIL-STD-129. (*See id.* at 4). MIL-STD-129 includes detailed specifications regarding every aspect of product markings. (*See* Ex. 39, Military Standard Marking for Shipment and Storage, MIL-STD-129C (July 11, 1960), at

iii–v). MIL-STD-129 governs the "marking of military supplies and equipment for shipment and storage." (*Id.* at 1). No unauthorized warnings are allowed.[1] (*Id.* at 8 ( "No markings, other than those specified in this standard, or authorized by the cognizant activity concerned, or those required by regulation or statute, shall be placed on any container, except as permitted in 4.2.1.1.")). Not only does MIL-STD-129 *not* require any asbestos-related warnings, the standard *does* require warnings for other potentially hazardous materials. (*See id.* at 13, 24, 67 (requiring markings for radioactive material, including "DANGER" and "Caution: Radioactive materials."); Ex. 40, Military Standard Marking for Shipment and Storage, MIL-STD-129C Change Notice 1 (Feb. 10, 1961), at 13–14 (adding more detailed specifications regarding marking radioactive materials); Ex. 41, Military Standard Marking for Shipment and Storage, MIL-STD-129C Change Notice 3 (Aug. 28, 1962), at 14a (governing the warning labels to be included for hazardous chemicals)). MIL-STD-129 also requires caution labels for packages containing magnetic equipment, including a warning that packages containing magnetic equipment that is packaged for air travel must be at least seven feet away from compass sensing devices. (Ex. 39, at 24).

14.    One of the products specified by the Corps of Engineers was Keene Super Powerhouse Cement. Although Keene Corporation manufactured a non-asbestos version

---

[1] While Part 4.2.1.1 allows advertising matter and case-level markings that do not interfere with the required markings, there is no exception permitting warning markings not required by MIL-STD-129. *See id.*

Cognizant activity is defined as either the contracting officer, for marking at the contractor's facilities; or the head of the bureau or service responsible for storage and shipment, for marking at installations. *Id.* at 4.

of this product for non-military use, it manufactured an asbestos-containing formulation in conformance with government specifications, exclusively for the use of the military:

> In November 1957, a military formulation of Super Powerhouse Cement containing 5% chrysotile asbestos was developed to conform to government specification. **This product was manufactured and sold exclusively for U.S. government military installations**.

(*See* Ex. 42, Keene Corporation's Response to Plaintiff's First Set of Interrogatories in *In re: North Dakota Personal Injury Asbestos Litigation No. I*, (D. N.D., May 24, 1990), pp. 15-16 (emphasis added); Ex. 43, Keene Corporation's Response to Plaintiff's Interrogatories and Request for Production of Documents, Set I *In re: Minnesota Personal Injury Asbestos Cases*, (D. Minn. Apr. 13, 1989), pp. 15-16)).

15.     The Corps of Engineers, on behalf of the U.S. Government, exerted similar control over the construction of Minuteman missile complexes.  Products used in the construction of the missile complexes had to follow Corps of Engineers specifications. Engineers from the Corps inspected construction work, including insulation work, being performed at the missile complexes on a daily basis.  (Ex. 44, Deposition of Noralf Tweit, 4/6/1982, pp. 11-26).

16.     At all times relevant, the U.S. Government had knowledge of the hazards of asbestos that was superior to that of insulation contractors such as Defendants. (*See generally* Ex. 37, at ¶ 12; *see also* Ex. 27, pp. 75-79).

17.     All packaging/bags of raw asbestos were provided with warning labels by Johns Manville by early 1969, while cements had been labeled in 1966 and finished pipe insulation was labeled earlier in 1964. Pre-OSHA voluntary labels were first placed on

asbestos-containing insulation products in 1964, cement used by insulators had warning labels in 1966, and various types of bag and all other bulk bag packaging of raw asbestos had warning labels in the US by 1968 or 1969.  (*See* Ex. 37, ¶¶ 8-9). Warnings were provided earlier by the U.S. military.  (*Id.*)

### III.    FEDERAL OFFICER REMOVAL JURISDICTION: APPLICATION OF SECTION 1442(A)(1) TO THIS CASE

18.    As provided by § 1442(a)(1), a civil action that is commenced in state court against, or directed to, "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed "to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1).

19.    More specifically, section 1442(a)(1) provides a private party with the right to remove to federal court where it is sued for actions taken under the direction of a federal officer. The right of removal conferred by §1442(a)(1) is to be broadly construed, and thus "[t]he Supreme Court has explicitly endorsed a broad reading of §1442 rather than 'a narrow, grudging interpretation.'" *Ferrell v. Yarberry*, 848 F. Supp. 121, 122 (E.D. Ark. 1994) (quoting *Arizona v. Manypenny*, 451 U.S. 232 (1981)).  *See also Nationwide Investors v. Miller*, 793 F.2d 1044, 1045-46 (9th Cir. 1986) (per curiam) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)); *Hardge-Harris v. Pleban*, 741 F. Supp. 764, 771 (E.D. Mo. 1990); *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989); *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir.

1986); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *514 Citizens & Taxpayers v. Fecteau*, 269 F. Supp. 769, 770 (D.N.H. 1966) ("In order to effectuate the purpose of this statute, it must be liberally construed").

20.     Underlying this broad application of section 1442(a)(1) is a concern "that state court suits against . . . corporations [acting under the direction of federal officers] could disrupt the execution of federal law." *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992). *See also Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 487 (1st Cir. 1989) ("Section 1442(a)(1) represent[s] a legislatively-spawned value judgment that a federal forum should be available when particular litigation implicates a cognizable federal interest").

21.     Jurisdiction exists under § 1442(a)(1) when four factors are met: the removing defendant is a "person" within the meaning of the statute; a causal nexus exists between the removing defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and the removing defendant can state a "colorable federal defense" to one or more[2] of the claims stated against it. *See, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

---

[2] "[I]f one claim cognizable under [§ 1442(a)(1)] is present, the entire action is removed, regardless of the relationship between the [§ 1442(a)(1)] claim and the non-removable claims." *National Audubon Soc'y v. Department of Water & Power*, 496 F. Supp. 499, 507 and 509 (E.D. Cal. 1980). See also *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). Further, the court has supplemental jurisdiction over all other claims that are not subject to 28 U.S.C. Section 1442(a)(1) by virtue of 28 U.S.C. Section 1367(a), which states: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

22.     Building Sprinkler is a corporation and therefore, it is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  See, *e.g.*, *Zeringue v. Crane Co.*, 2017 WL 279496 at *2 (5th Cir. Jan. 20, 2017); *Papp v. Fore-Kast Sales Co.*, 2016 WL 6871464 at *3 (3d Cir. Nov. 22, 2016); *Leite v. Crane Co.*, 749 F.3d 1117, 1122, n.4 (9th Cir. 2014); *Ruppel*, 701 F.3d 1176, 1181 (7th Cir. 2012); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008).

23.     To satisfy the "acting under" prong, the removing party must generally show that the federal official exercised "'direct and detailed control' over the defendant." *Fung*, 816 F. Supp. at 572 (citation omitted). Such "control" can be "satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" *Id.*  (citation omitted). Although merely "participat[ing] in a regulated industry" is typically not sufficient, courts have permitted removal where the defendants were "governed by 'exceedingly complex regulations, guidelines, and evaluation schemes.'" *Id.* (quoting *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841 (S.D.N.Y. 1973)). *See also In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 447 (E.D.N.Y. 2004) (removal proper where government has exercised "substantial degree of direct and detailed federal control").

24.     Building Sprinkler has satisfied the "acting under" prong because, in all relevant aspects of its supply and installation of insulation products at the MAFB and

form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

missile sites, Building Sprinkler was acting under the detailed direction and control of one or more federal officers regarding the use of asbestos-containing products. More specifically, such insulation materials to be used in Building Sprinkler's work were specified by specifications that were promulgated by the U.S. Air Force and/or Corps of Engineers and which specified the use of asbestos-containing thermal insulation materials. Notably, the U.S. Air Force and/or Corps of Engineers required the use of such asbestos-containing products despite the fact that the U.S. Government, at all times relevant to this case, had superior knowledge regarding asbestos-related health hazards.

25. In sum, no material aspect of the construction process, including Building Sprinkler's insulation work, escaped the close control of the Corps of Engineers and/or the U.S. Air Force and its officers, who retained final authority in all such regard. Therefore, Building Sprinkler was "acting under a federal officer" in its work at the MAFB and/or missile sites.  See, *e.g.*, *Ruppel*, 701 F.3d at 1181; *French v. A.W. Chesterton Co.*, 2016 WL 6649281 at *3 (N.D. Ohio Nov. 10, 2016); *Commardelle v. Pennsylvania General Ins. Co.*, 2014 WL 1117969 at *3-4 (E.D. La. Mar. 18, 2014); *Najolia v. Northrop Grumman Ship Sys.*, 883 F. Supp. 2d 646, 653-54 (E.D. La. 2012); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993); *Fung*, 816 F. Supp. at 572.

26. Because Building Sprinkler has been sued for asbestos-related injuries purportedly arising from or relating to asbestos-containing products that they allegedly supplied to and/or installed at the MAFB and missile sites under the U.S. Government's detailed direction and control, Building Sprinkler has been sued in relation to conduct

under color of federal office, satisfying the "causal nexus" requirement. *Madden v. Able Supply Company*, 205 F. Supp. 2d 695, 701-02 (S.D. Tex. 2002). Accordingly, the "causal nexus" standard is satisfied as to asbestos-related injury claims involving Building Sprinkler's supply of and/or use of asbestos at the MAFB. See, e.g., *Ruppel*, 701 F.3d at 1181; *French*, 2016 WL 6649281 at *4; *Laurent v. City of New Orleans*, 2014 WL 5410654 at *3 (E.D. La. Oct. 23, 2014); *Shepherd v. Air & Liquid Systems Corp.*, 2012 WL 5874781 at *8-9 (D. R.I. November 20, 2012); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 2012 WL 3155180 at *8 (E.D. Pa. Aug. 2, 2012); *Kite v. Bill Vann Company, Inc.*, 2011 WL 4499345 at *4 (S.D. Ala. 2011); *Dupre v. Todd Shipyards Corp.*, 2011 WL 4551439 at *6 (E.D. La. Sept. 29, 2011); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1334-35 (N.D. Ala. 2010); *Allen v. CBS Corporation*, 2009 WL 4730747 at *2-3 (D. Conn. Dec. 1, 2009); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 at *5 (E.D. Va. Dec. 15, 20014); *Madden*, 205 F. Supp. 2d at 701-02.

27. As to the question of a colorable federal defense, Building Sprinkler hereby asserts a government contractor defense pursuant to *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). A federal contractor cannot be held liable for a state tort if, in the context of the work at issue: (1) the United States approved reasonably precise specifications; (2) the work conformed to those specifications; and (3) the contractor warned the United States about the dangers in the use of the product that were known to the supplier but not to the United States. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805 (3d Cir. 2016). Therefore, Building Sprinkler can, accordingly, state at least a colorable

17

government contractor defense in relation to such claims, because (1) to the extent Building Sprinkler supplied and/or installed asbestos-containing insulation products, such products were supplied and/or installed in accordance with "reasonably precise specifications" promulgated or heedfully approved and adopted by the Corps of Engineers on behalf of the U.S. Air Force; (2) the products supplied and/or installed by Building Sprinkler, and its work at the site conformed with those specifications; and (3) at all times relevant to this suit, the U.S. Government was independently aware of and had superior knowledge of the potential health hazards associated with asbestos exposure and Building Sprinkler did not know about the potential health hazards associated with asbestos exposure that were not known to the U.S. Government. *See e.g. Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 814 (3d Cir. 2016) (removal proper where government had a superior understanding of the risks of asbestos); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010) ("The defense does not require the contractor to warn the government of hazards where "the government knew as much or more than the defendant contractor about the hazards of the ... product.").

28.    The fact that the government was already fully aware of the hazards of asbestos satisfies the third element of the government contractor defense. *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 2018 (S.D. Ill. 1989) (U.S. Air Force had superior knowledge of the hazards of asbestos so government contractor defense was applicable); *Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.*, 883 F.2d 1210, 1216 (3d Cir.1989) (warnings to the government are not required when the government agency "knew as much or more" about the danger than the contractor); *Ramey v. Martin–*

*Baker Aircraft Co. Ltd.*, 874 F.2d 946, 951 (4th Cir.1989) (federal contractor defense applied because the record revealed that the Navy already had "full knowledge of the danger").

29.    Here, the government specifications included detailed labeling specifications, including warning specifications, which show the extensive control and discretion that the government exercised over the specifications Building Sprinkler was required to follow. The level of government oversight, and its acceptance of both the products being applied and work being performed by Building Sprinkler, including rejecting any non-conforming products or work, demonstrates that Building Sprinkler complied with all government specifications, including labeling and warning specifications. *See Miller v. Diamond Shamrock Co*., 275 F.3d 414, 420 (5th Cir. 2001); *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 (D. Conn. 2007) (holding affidavit stating that "any materials supplied by a contractor that were not entirely consistent with the Navy's extensive specifications probably would have been rejected. From this, the inference can be drawn that if [plaintiff] was exposed to [defendant's] products while on board a Navy ship, that equipment fully complied with the Navy's detailed specifications concerning both design and warnings).

30.    The government contractor defense applies to both the design defect and failure to warn claims asserted by Plaintiff.  *See, e.g.*, *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 814, 814 n.6 (3d Cir. 2016); *See Caldwell v. Morpho Detection, Inc.*, No. 4:10CV1537 JAR, 2013 WL 500867, at *7 (E.D. Mo. Feb. 11, 2013); *Schmid v. Unisys Corp.*, No. 4:95CV00864 LOD, 1996 WL 421843, at *17 (E.D. Mo. July 24, 1996).

31.     Similar to design defect claims, warning decisions by the government can conflict with state law warning requirements, and cause the type of conflict *Boyle* recognized as "present[ing] a 'significant conflict' with federal policy." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512, 108 S. Ct. 2510, 2518 (1988); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996) (noting that "similar policy considerations control both design defect and failure-to-warn situations" and *Boyle* can offer guidance in the failure to warn context). Because the government is not liable when it exercises a discretionary function, its contractors are also not liable when they carry out the discretionary decisions of the government because they are required to act in the manner decided upon by the government. *Id.* at 511–12, 108 S. Ct. at 2518; *see also Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 211 (4th Cir. 2016) ("[T]he constitutional separation of the judiciary from military matters carries no less force with respect to the design of military equipment than it does with respect to the warnings accompanying such equipment."). Where the government exercises it discretion over the contractors' actions, the government has an interest in insulating its contractors from state law liability arising out of the contractors actions. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995).

32.     In sum, and consistent with the short and plain statement of the law and facts offered herein, this Court has original jurisdiction over the subject matter of this suit pursuant to § 1442(a)(1) given that Building Sprinkler was acting under an officer or agency of the United States relative to one or more of the claims stated against it, and can state at least a colorable federal defense to said claim or claims.  *See e.g. Dorothy*

20

*Kotalik, individually and on behalf of the Estate of John J. Kotalik, deceased, Plaintiff v. A.H. Bennett Company, et al., Defendants*, Court File No. 3:18-cv-246) (D. N.D.) [*See* Doc. No. 109, 113]; and *Catherine Selfors, individually and on behalf of the Estate of Duane Selfors, deceased, Plaintiff v. A.H. Bennett Company, et al., Defendants*, Court File No. 3:18-cv-251 (D. N.D.) (holding case was removable pursuant to federal officer removal statute as to Building Sprinkler under substantially similar facts) [*See* Doc. No. 110, 114).

## PROCEDURAL REQUIREMENTS

33.    A notice of removal must be filed within thirty days of the defendant's receipt of the initial pleading or, "[i]f the case stated by the initial pleading is not removable," within thirty days of the defendant's receipt of "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable[.]"  28 U.S.C. § 1446(b)(3).  This notice of removal is timely because it is filed within thirty (30) days of Building Sprinkler's receipt of the Complaint in this case.

34.    Removal is proper as one or more of the claims stated against Building Sprinkler in this case falls within the scope of 28 U.S.C. § 1442(a)(1) (federal officer removal jurisdiction).

35.    Building Sprinkler has no duty to notify in advance, or to obtain the consent of, any other defendant to this action in order to remove this case.  See *e.g., Humphries v. Elliott Co*., 760 F.3d 414, 417 (5th Cir. 2014); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Akin v. Ashland Chem. Co*., 156 F.3d 1030, 1034 (10th

Cir. 1998); *Ely Valley Mines v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

36.     In compliance with 28 U.S.C. § 1446(d), Building Sprinkler will promptly provide written notice of this Notice of Removal to all adverse parties, and, promptly after the filing of this Notice of Removal, will file a copy thereof with the Clerk of the Cass County District Court, East Central Judicial District, State of North Dakota.

37.     Pursuant to 28 U.S.C. § 1446(a), Building Sprinkler has filed a copy of all process, pleadings and all other documents filed in the state court proceeding, which are attached to the Declaration of Heather H. Neubauer, filed contemporaneously with this Notice of Removal.

38.     By filing this Notice of Removal, Building Sprinkler does not waive any of its affirmative defenses, including but not limited to the right to move to dismiss for lack of personal jurisdiction, improper process, improper service of process, improper venue, failure to state a claim upon which relief can be granted, or failure to join all necessary parties.

WHEREFORE, Building Sprinkler removes this action from the District Court for Cass County, East Central Judicial District, State of North Dakota, to the United States District Court for the District of North Dakota, and that all further proceedings in this action be held before this Court.

Dated:  June 27, 2019                                MEAGHER & GEER, P.L.L.P.

                                                     By: */s/ Heather H. Neubauer*
                                                     Heather H. Neubauer (ND #06638)
                                                     hneubauer@meagher.com
                                                     33 South Sixth Street, Suite 4400
                                                     Minneapolis, MN 55402
                                                     (612) 338-0661

                                                     ***ATTORNEYS FOR BUILDING
                                                     SPRINKLER COMPANY, INC.***

12884860.1